DAVID A. BELCHER (SBN 330166)
david.belcher@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  +1 310 203 4000
Facsimile:   +1 310 229 1285

Attorneys for Defendant
WEBBANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONDA LUFT,<br><br>              Plaintiff,<br><br>     v.<br><br>WEBBANK; and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>              Defendants. | Case No. 8:22-cv-00936-DOC-DFM<br><br>**WEBBANK'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:          August 1, 2022<br>Time:          8:30 a.m.<br>Judge:        Hon. David O. Carter<br>Courtroom:  10A |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................5

II.   LACK OF PERSONAL JURISDICTION .......................................5

III.  FAILURE TO STATE A CLAIM ...............................................8

    A.    Luft fails to identify the information she alleges that WebBank incorrectly reported and misconstrues the caselaw. ..............................9

    B.    Luft admits that she did not allege the necessary element that WebBank received notice of the dispute from Experian. .....................10

IV.   IN THE ALTERNATIVE, THE CASE SHOULD NOT BE TRANSFERRED.......................................................................11

V.    CONCLUSION ......................................................................11

2

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ali v. Long Beach Acceptance Corp.*,
No. CIV-F-07-1062 AWI SMS, 2007 WL 3335015 ......................................... 10

*In re Auto. Antitrust Cases I & II*,
135 Cal. App. 4th 100, 37 Cal. Rptr. 3d 258 (2005) ............................................ 6

*Baker v. Capital One Bank*,
No. CV 04-01192-PHX-NVW, 2007 WL 9724064 (D. Ariz. Jan. 8,
2007) ................................................................................................................... 10

*Banneck v. HSBC Bank USA, N.A.*,
Case No. 15-c-02250-HSG, 2016 WL 3383960 (N.D. Cal. June 20,
2016) ..................................................................................................................... 9

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985) ......................................................................................... 7, 8

*Calder v. Jones*,
465 U.S. 783 (1984) ............................................................................................ 7

*Coulter v. Chase Bank USA, N.A.*,
Civil Action No. 18-1538, 2020 WL 5820700 (E.D. Pa. Sept. 30,
2020) ................................................................................................................... 10

*Johnson v. US Bank Home Mortg.*,
20 C 3433, 2020 WL 6801847 (N.D. Ill. Nov. 19, 2020) ................................. 10

*Kaiser Aetna v. Deal*,
86 Cal. App. 3d 896, 150 Cal. Rptr. 615 (Ct. App. 1978) .................................. 6

*Perez v. Medicredit*,
Case No. SACV 18-2283JVS(JDEx), 2019 WL 3063514 (C.D. Cal.
Mar. 14, 2019) ................................................................................................... 10

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ............................................................................ 7

*Rush v. Savchuk*,
444 U.S. 320 (1980) ............................................................................................ 6

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ............................................................................ 6

*Toliver v. Experian Info. Solutions, Inc.*,
973 F.Supp.2d 707 (S.D. Tex. 2013) .................................................................. 6

*Walden v. Fiore*,
571 U.S. 277 (2014) ............................................................................................ 6

3

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 1681s-2(b) ...................................................................................... 9, 10

California's Rosenthal Act ............................................................................... 5, 8, 11

FCRA ................................................................................................... *passim*

4

## I.    INTRODUCTION

Plaintiff Ronda Luft ("Luft") tries to impute actions from Defendant Experian to WebBank and misapplies the case law.

*First*, Luft fails to establish that this Court has personal jurisdiction over WebBank. Luft focuses exclusively on the relationship between WebBank and Experian as the basis for personal jurisdiction, but under binding precedent, interactions with a third party are insufficient to establish personal jurisdiction in a forum.

*Second*, Luft all but admits that she hasn't stated a claim against WebBank. In her Complaint and Opposition Brief, the only information Luft alleges that was incorrectly reported on her credit report was the "Date of Status" and "First Reported Date." She admits that WebBank doesn't report this information. Instead, she argues that it is "plausible" WebBank furnished incorrect information that led Experian to incorrectly report the Date of Status and First Reported Date, but she can't even say what that information might be. This failure to identify the information WebBank allegedly reported incorrectly distinguishes the facts here from all the authority cited by Luft. This cannot survive a motion to dismiss. Additionally, Luft admits that she failed to allege that WebBank received notice of the dispute from the credit reporting agency. Each of these reasons alone are sufficient grounds to grant the motion to dismiss.

*Third*, Luft's request in the alternative to transfer the case to the Eastern District of Washington should be denied as futile, because Luft fails to state a claim under the FCRA or Rosenthal Act. For all these reasons, and those stated in WebBank's opening brief, the Court should dismiss Luft's claims against WebBank with prejudice.

## II.    LACK OF PERSONAL JURISDICTION

Luft attempts to create this Court's personal jurisdiction over WebBank by focusing on Experian's rather than WebBank's connections to the forum through this

WEBBANK'S REPLY BRIEF ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

litigation. The Supreme Court and Ninth Circuit have made clear that the requirements of the Due Process Clause "must be met as to each defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *see also Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("[J]urisdiction over each defendant must be established individually."). WebBank's business in California with other customers and its involvement in other legal actions in California do not create personal jurisdiction as it relates *to this matter*. *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (providing that the "inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the *relationship among* the defendant, the forum, and *the litigation.*" (Emphasis added) (cleaned up)).

Next, Luft argues that there is personal jurisdiction over WebBank because it communicated with California-based Experian as it relates to reporting on Luft's account. But precedent is clear that co-defendants do not confer personal jurisdiction over each other. Rather, personal jurisdiction must be established as to each defendant independently. *In re Auto. Antitrust Cases I & II*, 135 Cal. App. 4th 100, 113, 37 Cal. Rptr. 3d 258, 271 (2005) ("The purposes and acts of one party—even an alleged co-conspirator—cannot be imputed to a third party to establish jurisdiction over the third party defendant."); *Kaiser Aetna v. Deal*, 86 Cal. App. 3d 896, 901, 150 Cal. Rptr. 615, 619 (1978) ("The Acts of other parties therefore cannot be imputed to respondents for the purpose of assuming personal jurisdiction over them.").

Additionally, the few interactions that WebBank had with Experian regarding Luft are insufficient to establish personal jurisdiction. In 2013, Experian asserted that it stored 2.6 billion trade lines from approximately 30,000 different sources belonging to over 200 million customers, with about 50 million updates daily. *Toliver v. Experian Info. Solutions, Inc.*, 973 F.Supp.2d 707, 727 (S.D. Tex. 2013). The only allegation in the Complaint as it relates to the communications between WebBank

WEBBANK'S REPLY BRIEF ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

and Experian about Luft is that "WebBank erroneous reporting [sic] to Experian resulted in the date change." (Compl. ¶ 18.) Routine credit reporting from WebBank to Experian, as required by law, does not constitute a purposeful direction of activities toward the forum state to constitute personal jurisdiction. Moreover, the exercise of jurisdiction over WebBank based on a routine report that is one of millions of updates that Experian receives daily does not comport with fair play and substantial justice. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Indeed, if Luft's theory of personal jurisdiction were correct, every consumer anywhere in the United States could sue any creditor that reports to Experian, one of the three main credit bureaus, in California. This is an absurd result that does not comport with Due Process.

The case law that Luft cites in support of her personal jurisdiction argument makes apparent its absence here. In *Calder v. Jones*, the Supreme Court noted that the libelous story concerned the California activities of a California resident, whose career was centered in California, the article was drawn from California sources, and the brunt of the harm was suffered in California. *Calder v. Jones*, 465 U.S. 783, 788–89 (1984). The California courts therefore had proper jurisdiction over the Florida defendants because the "effects" of their conduct were in California. *Id.* at 789. Notably, a third party did not confer personal jurisdiction over the defendants in California. Here, in stark contrast, Luft lived in Washington, opened her Fingerhut account in Washington, incurred a personal debt in Washington, disputed her credit report in Washington, and suffered her alleged harms in Washington. WebBank has always been headquartered in Utah. The only actions directed toward California as part of this litigation were the alleged reporting of the debt between WebBank and third-party Experian, because WebBank is legally required to report and credit bureau Experian happens to be located in California. Jurisdiction over WebBank in California is not proper because the "effects" of WebBank's actions have no connection to California.

WEBBANK'S REPLY BRIEF ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

In *Burger King*, defendant Rudzewicz deliberately reached out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise. The parties then entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. *Burger King v. Rudzewicz*, 471 U.S. 462, 479–80 (1985). When Rudzewicz failed to make the payments in Miami and continued to use Burger King's trademarks and confidential business information after his termination, his actions caused foreseeable injuries to the corporation in Florida. *Id.* at 480. Again, there was no third party that contributed to personal jurisdiction being established in Florida. Unlike *Burger King*, none of the action between Luft and WebBank took place in California, and none of the foreseeable injuries would be felt in California. For these reasons, none of the authority cited by Luft supports personal jurisdiction over WebBank in California.

Finally, Luft does not dispute (and thereby concedes) that merely bringing a claim under California's Rosenthal Act does not create personal jurisdiction over WebBank. For all these reasons, the Court lacks personal jurisdiction over WebBank, and the case should be dismissed.

### III.    <u>FAILURE TO STATE A CLAIM</u>

Luft's arguments that she stated a claim under the FCRA lack merit. As a preliminary issue, Luft argues that the blank ACDV form and the declaration from Kelly Gray cannot be considered as part of this motion to dismiss because these materials were not relied upon in the Complaint. Although Luft correctly states that she never used the specific terms "ACDV" or "Metro 2 forms" in the Complaint, she necessarily relies upon them because these are the only ways in which WebBank as a furnisher submits information to Experian. Additionally, the blank ACDV form is available to all data furnishers, and the Court may take judicial notice of it as a public record. Therefore, the Court should consider the blank ACDV form and the information from the declaration of Kelly Gray.

**A.** **Luft fails to identify the information she alleges that WebBank incorrectly reported and misconstrues the caselaw.**

Luft fails to state a claim upon which relief can be granted under the FCRA because the information she asserts was inaccurately reported is not reported by WebBank. Based on the allegations in the Complaint, Luft asserts that the only information that was incorrectly reported was the "Date of Status" and "First Reported Date." (Compl. ¶¶ 14, 17.) As shown through the ACDV, WebBank doesn't report any of this information, and Luft agreed that WebBank doesn't report this information. She pivots and argues that Experian uses the many data fields reported by furnishers to create the Date of Status. (Plt's Br. 13.) But she cannot say what information WebBank may have reported that led to the incorrect reporting by Experian, only that it was "some other information." (*Id.* at 15.) This is insufficient to state a claim against WebBank. The elements under 15 U.S.C.§ 1681s-2(b) include the requirements that WebBank investigate the "disputed information," and review "all relevant information provided." WebBank cannot possibly investigate disputed information if Luft doesn't even know what information that might be. Luft failed to state a claim under the FCRA against WebBank, and the claim should be dismissed.

Luft's response is significant for an additional reason. Experian is gathering information, processing it in some way, and then creating their own reports. WebBank is not responsible and has no way to control how Experian collects, uses, makes conclusions based on information, and ultimately reports information on *its* credit reports. This is another admission by Luft that WebBank doesn't report the information that she alleges is incorrect.

All of the authority cited by Luft is distinguishable because in those cases, and contrary to the facts here, the plaintiffs alleged the exact information that the furnishers incorrectly reported. In *Banneck v. HSBC*, Experian contended that HSBC incorrectly reported the date of a short sale, which contributed to the incorrect reporting of the "date of status" by Experian. *Banneck v. HSBC Bank USA, N.A.*, Case No. 15-c-02250-HSG, 2016 WL 3383960, at *8 (N.D. Cal. June 20, 2016). In

9

Case 2:22-cv-00182-MKD    ECF No. 24    filed 07/25/22    PageID.155    Page 10 of 13

*Coulter v. Chase Bank USA*, the plaintiff began by asserting generally that the "date of status" was incorrectly reported, but clarified that Chase Bank, as the furnisher, misreported the "date of account information," upon which Experian relied. *Coulter v. Chase Bank USA, N.A.*, Civil Action No. 18-1538, 2020 WL 5820700, at *10 (E.D. Pa. Sept. 30, 2020). In *Baker v. Capital One*, the bank incorrectly reported the date of the bankruptcy. *See Baker v. Capital One Bank*, No. CV 04-01192-PHX-NVW, 2007 WL 9724064, at *3 (D. Ariz. Jan. 8, 2007) (summarizing the earlier summary judgment decision). And in *Johnson v. US Bank Home Mortgage*, plaintiff alleged that U.S. Bank incorrectly reported the charge-off date. *Johnson v. US Bank Home Mortg.*, 20 C 3433, 2020 WL 6801847, at *1 (N.D. Ill. Nov. 19, 2020).

In all of these cases, the plaintiffs identified specific information that the furnisher incorrectly reported to the credit reporting agency, which in turn contributed to the incorrect reporting of the "Date of Status" by the credit reporting agency. In contrast, Luft cannot identify any information that WebBank allegedly incorrectly reported. Without any allegations that WebBank reported any information incorrectly, Luft fails to state a claim against WebBank.

**B.    Luft admits that she did not allege the necessary element that WebBank received notice of the dispute from Experian.**

Luft concedes that she failed to plead that WebBank received notice of the dispute from the credit reporting agency. A necessary element to state a claim under § 1681s-2(b) is that the furnisher received notice from the credit reporting agency of the dispute. *Ali v. Long Beach Acceptance Corp.*, No. CIV-F-07-1062 AWI SMS, 2007 WL 3335015, at *4 E.D. Cal. Nov. 9, 2007); *Perez v. Medicredit*, Case No. SACV 18-2283JVS(JDEx), 2019 WL 3063514, at *3 (C.D. Cal. Mar. 14, 2019). Luft admits that this allegation was "not totally explicit" and was an "omission." (Plt's Br. 17.) As such, she failed to plead a necessary element to state a claim under the FCRA as to WebBank. The Court should deny the request for leave to amend because such an amendment would be futile given the other deficiencies discussed above.

WEBBANK'S REPLY BRIEF ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

#### IV.    IN THE ALTERNATIVE, THE CASE SHOULD NOT BE TRANSFERRED

The Court should deny the alternative request to transfer the case because such an action would be futile. Luft fails to state a claim upon which relief can be granted as to WebBank. First, her claim under the FCRA does not survive because WebBank does not report the information Luft alleges was incorrect and she failed to plead a necessary element of the claim. Second, Luft's claim under the Rosenthal Act is a California statute that cannot be brought by a Washington state citizen against a Utah corporation. Transferring this case will not resolve the fundamental deficiencies with Luft's Complaint against WebBank.

#### V.    CONCLUSION

The Court should dismiss the claims against WebBank with prejudice because amending the Complaint would be futile. This Court does not have personal jurisdiction over WebBank, and Luft cannot create it by improperly asserting a claim under California's Rosenthal Act. Additionally, Luft fails to state a claim under the FCRA because WebBank does not furnish the information she asserts is inaccurate and Luft failed to plead a necessary element. For the foregoing reasons, and all the reasons stated in WebBank's opening brief, the Court should dismiss the Complaint against WebBank with prejudice.

Dated:  July 25, 2022

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP


By:_____ */s/ David A. Belcher*_____
        David A. Belcher

Attorneys for Defendant
WEBBANK

WEBBANK'S REPLY BRIEF ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Faegre Drinker Biddle & Reath LLP, 1800 Century Park East, Suite 1500, Los Angeles, California 90067.

On **July 25, 2022**, I served the foregoing document described as: **WEBBANK'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** on the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

___X___  **By ELECTRONIC FILING** (I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel denoted on the attached Service List.)

_____  **By PERSONAL SERVICE**

    _____  by personally delivering such envelope to the addressee.

    _____  by causing such envelope to be delivered by messenger to the addressee.

_____  **By UNITED STATES MAIL** (I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.)

_____  **By OVERNIGHT DELIVERY** (by causing such envelope to be delivered to the office of the addressee by overnight delivery via Federal Express or by other similar overnight delivery service.)

_____  **By FAX TRANSMISSION**

_____  **By E-MAIL OR ELECTRONIC TRANSMISSION**

_____  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

___X___  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **July 25. 2022**, at Los Angeles, California.

      DAVID A. BELCHER                 /s/ *David A. Belcher*
Name                                Signature

## **SERVICE LIST**
*Ronda Luft v. WebBank, et al.*
*USDC Case Number 8:22-cv-00936-DOC-DFM*

Robert Sibilia, Esq.
robert@oceansidelawcenter.com

Cheryl L. O'Connor, Esq.
coconnor@jonesday.com, ecfirvinenotifications@jonesday.com,
jthakur@jonesday.com

Patrick Jeffrey Hall, Esq.
phall@jonesday.com, garaya@jonesday.com, ecfirvinenotifications@jonesday.com

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

WEBBANK'S REPLY BRIEF ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT